UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEANNA CULVER
          Plaintiff,

v.                                                Case No. 07-C-643

MICHAEL ASTRUE,
          Defendant.

## DECISION AND ORDER

Plaintiff Deanna Culver has filed an action seeking review of the decision of the Commissioner of Social Security. After an initial denial and reconsideration, Plaintiff appeared at a hearing before an ALJ on January 24, 2007. The ALJ found Culver not disabled, and the Appeals Council denied Plaintiff's request for review. Plaintiff then filed this action in the district court. For the reasons given below, the decision of the ALJ will be reversed and the case remanded to the Social Security Agency for further proceedings.

**I. Background**

At the time of the hearing, Plaintiff was thirty-two years old and weighed 240 pounds. She formerly worked as a school bus driver but had to stop driving buses in late 2005 due to narcolepsy and problems with her foot. At the time of the hearing she presented with a combination of physical and mental problems that she alleged rendered her disabled. Among her physical impairments were fibromyalgia, chronic pain, ankle pain, arthritis and daily back spasms. She alleged her daily pain often reached nine on a scale of one to ten. (Tr. 322.) She also reported depression and difficulty sleeping. Further facts pertinent to the case are set forth below where relevant.

**II. Analysis**

Review of an ALJ's denial of benefits is not *de novo*. In reviewing the decision of the ALJ, a court does not "reweigh evidence, resolve conflicts in the record, decide questions of credibility, or, in general, substitute [the court's] own judgment for that of the Commissioner." *Young v. Barnhart,* 362 F.3d 995, 1001 (7th Cir. 2004). Instead, the central question on appeal is "whether the ALJ's factual findings are supported by substantial evidence." 42 U.S.C. § 405(g). *Id.* Evidence is substantial if a reasonable person would accept it as adequate to support the conclusion. *Id.*

**1. Credibility**

The ALJ's decision turned largely on his conclusion that Culver's description of her pain levels was somewhat exaggerated. Although the ALJ found her combination of impairments to be severe, he did not find that her assertions of disabling pain were fully credible in light of the medical evidence and her own activities.

Plaintiff argues the ALJ erred in finding her less than fully credible. In particular, Plaintiff contends that the ALJ erred by failing to account for the fact that fibromyalgia, by its very nature, has no known cause and is often entirely subjective. *Sarchet v. Chater,* 78 F.3d 305, 306-07 (7th Cir. 1996). Because it is a subjective disease, Plaintiff argues, the fact that her objective medical evidence does not support her claims is unsurprising and should not have been counted against her in discounting her credibility. In fact, she notes, she was seen several times for fibromyalgia by Dr. Partrain, who diagnosed several tender points. Because she was diagnosed with fibromyalgia, she argues the ALJ was under an obligation to determine whether her reported symptoms were consistent with that disease.

The ALJ did not discount Plaintiff's credibility on the grounds that her fibromyalgia was not supported by objective medical evidence, however. In fact, he noted that it was part of the "severe" combination of conditions she suffered. (Tr. 29.) Not every claimant diagnosed with fibromyalgia is disabled, and in fact complete disability is quite rare: "[s]ome people may have such a severe case of fibromyalgia as to be totally disabled from working . . . but most do not and the question is whether [claimant] is one of the minority." *Id.* at 307. Thus, the ALJ's task was not to determine whether Plaintiff had fibromyalgia or not (he found that she did); it was to evaluate her claimed symptoms (e.g., extent of pain and movement limitations) in light of the medical evidence and her testimony in order to determine *how* disabling that condition actually is.

The ALJ did consider the lack of objective evidence in assessing the *extent* of Plaintiff's pain, and of course there is nothing unusual about that. Obviously, if a claimant says she has crippling fibromyalgia but runs a marathon twice a week, the ALJ need not turn a blind eye to the objective facts. *Id.* ("Sarchet testified that her pain has virtually immobilized her but of course the administrative law judge did not have to believe her. If the administrative law judge believed the medical reports that found that Sarchet has enough strength to work and disbelieved Sarchet's own testimony, this would compel the denial of the application for benefits.") That is, in a nutshell, what the ALJ found here.

The ALJ cited several reasons for discounting the Plaintiff's credibility. First, he found that Plaintiff had not been seen by her doctors on a consistent basis for her fibromyalgia. Treatment notes from Dr. Partain indicate his frustration with her lack of follow-up (only three visits in three years), which made treatment difficult. (Tr. 249-250.) From that the ALJ apparently drew the conclusion that had her fibromyalgia been more severe she would have sought more regular

3

treatment and pain medication.[1]  Additionally, in none of the medical records does the Plaintiff allege the kinds of crippling pain that would render her disabled.  As noted earlier, it is not enough for a claimant to have fibromyalgia – one must demonstrate that the disease's symptoms are disabling, and the records do not support that conclusion.

Second, the ALJ noted that she drove a bus (albeit part-time) until late 2005, which suggests her fibromyalgia was not limiting at that date.  Indeed, the records show that Plaintiff had to quit the job not because of fibromyalgia but because foot/ankle pain made it difficult for her to use the pedals, and she was also susceptible to narcolepsy given her mild sleep disorder.  She testified that she fought to keep her job because she loved it (which is admirable), but that fact undercuts the notion that she was *unable* to work due to fibromyalgic or other pain.  (Tr. 327.)  It was simply that the bus company refused to allow her to continue working as a driver when an exam to keep her CDL revealed that she had fallen asleep at the wheel with children on board.  (Tr. 326.)  Thus, the ALJ apparently believed that as of late 2005 the Plaintiff herself believed herself capable of working – just not as a bus driver, perhaps – and that evidence post-dates much of the medical evidence in the record.  The ALJ was entitled to consider these circumstances in determining the Plaintiff's credibility as to her levels of pain.[2]

---

[1] Plaintiff is correct that the ALJ did not specify which medical evidence he was relying on in making this conclusion.  Still, the only inference to be drawn from the ALJ's decision is that because Plaintiff failed to seek consistent care, her claim that she was experiencing a "nine" pain level (or sometimes higher) was not fully credible.

[2] This is not to say that the ALJ's credibility determination is a model of administrative clarity.  The decision denying benefits was roughly six pages in length, almost five of which are boilerplate.  I am reaching what I believe are permissible inferences from the rather barebones explanation the ALJ did provide (rather than supplying *additional* reasons, which is what the government's brief does on several occasions).

4

Finally, the ALJ noted that Plaintiff was able to sit for forty-five minutes during the hearing. Although a claimant is under no obligation to "sit and squirm" at a disability hearing, an ALJ's in-person observation of a claimant is an important component of his credibility determination.[3] *Dixon v. Massanari,* 270 F.3d 1171, 1178 -79 (7th Cir. 2001) ("Because the ALJ is in the best position to observe witnesses, we will not disturb her credibility determinations as long as they find some support in the record.") And when the claimant alleges daily chronic pain at the "nine" level or higher, it might be especially probative (again, in the eye of the ALJ) if the claimant seems essentially normal and in little distress during an extended hearing. *Powers v. Apfel,* 207 F.3d 431, 436 (7th Cir. 2000) ("The hearing officer had an opportunity to observe Powers for an extended period of time and could gauge whether her demeanor, behavior, attitude and other characteristics suggested frankness and honesty and were consistent with the general bearing of someone who is experiencing severe pain.")

Accordingly, I conclude that substantial evidence supports the ALJ's finding that the Plaintiff's description of her pain levels was not fully credible. The Plaintiff herself thought she could work as a bus driver as of late 2005; she did not seek consistent treatment for pain or fibromyalgia; and the ALJ observed no discomfort during a forty-five minute hearing. These were at least permissible reasons to discount her credibility.

---

[3] The fact that "faking" pain or discomfort is easy is one reason the "sit and squirm" approach is frowned upon. (Another reason is that chronic pain does not mean constant pain.) In other words, a claimant will not generally bolster his case merely by displaying discomfort during his hearing. Still, when a claimant does *not* appear to be in any discomfort (especially while alleging chronic pain and an inability to sit still for extended periods of time), the ALJ's in-person observations carry more weight. Courts are likely reluctant to place too much weight on the matter, however, for fear of encouraging every claimant to appear to be in greater distress than they are.

5

**2. Residual Functional Capacity**

Residual Functional Capacity (RFC) describes "what the individual can still do despite his or her limitations." SSR 96-8p, 61 Fed. Reg. 34474, 34475 (1996). The ALJ found that the Plaintiff was capable of performing unskilled, sedentary work not involving hazards or driving. (Tr. 30-31.) The ALJ did not explain his conclusion in great detail, but it is evident that the RFC finding relied primarily upon the ALJ's credibility determination. In short, because the ALJ did not believe the Plaintiff's pain and other limitations were as severely disabling as Plaintiff alleged, he found she would be able to work at a "basic sedentary unskilled job." (Tr. 31.)

Plaintiff argues that the ALJ's RFC finding was conclusory, at best. Because the ALJ simply stated his RFC conclusion without providing any analysis for it, he failed to articulate the function-by-function analysis required in SSR 96-8p:

> At step 5 of the sequential evaluation process, RFC must be expressed in terms of, or related to, the exertional categories when the adjudicator determines whether there is other work the individual can do. However, in order for an individual to do a full range of work at a given exertional level, such as sedentary, the individual must be able to perform substantially all of the exertional and nonexertional functions required in work at that level. Therefore, it is necessary to assess the individual's capacity to perform each of these functions in order to decide which exertional level is appropriate and whether the individual is capable of doing the full range of work contemplated by the exertional level.

SSR 96-8p, 61 Fed. Reg. at 34476.

Although the ALJ did at least implicitly address how the Plaintiff's fibromyalgia would allow her to work at a sedentary job (because the pain was not as severe as alleged), he did not fully explain that conclusion with respect to Plaintiff's other limitations. For example, Plaintiff alleged not just pain but arthritis, which caused difficulty with her grip to the extent she had trouble using a cane and had difficulty holding onto things. (Tr. 323.) She also has narcolepsy and is generally

6

very tired throughout the day. Although it is conceivable that an individual with these problems could still perform sedentary work, the ALJ's decision does not allow a reviewing court to discern whether he considered these limitations in the RFC. As Plaintiff notes, presumably many of the strictly sedentary, unskilled jobs the ALJ had in mind would still require extensive, repetitive use of one's hands, and it is not clear from the record that the Plaintiff could hold down such a job. *Young v. Barnhart,* 362 F.3d 995, 1002 (7th Cir. 2004) ("The RFC falls short because it fails to account for the evidence in the record.")

Similarly, the Plaintiff's mental health limitations were not addressed at any length by the ALJ. She testified that she was depressed every day, that she wished she were able to partake in normal activities with her children (one of whom wrote a school report about her mother's disability), and that she had frequent crying spells (including during the hearing). (Tr. 327.) In discussing these limitations, the ALJ found they only moderately limit her daily functioning. The ALJ did not explain this conclusion other than to state that Plaintiff reported daily activities including driving, cooking, "going up and down stairs," etc. (Tr. 31.) It is unclear how these common daily activities pertain to the mental health issue. *Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir. 2008) ("the judge noted that the plaintiff dresses appropriately, shops for food, prepares meals and performs other household chores, . . . is 'independent in her personal hygiene,' and takes care of her 13-year-old son. This is just to say that the plaintiff is not a raving maniac who needs to be locked up.")[4] The daily activities cited by the ALJ may speak to Plaintiff's physical or exertional limitations, but not to any mental limitations she might have.

---

[4]The government's brief makes a good case for affirmance based on the record as a whole, but much of the evidence it cites in its brief was not discussed by the ALJ, and the reviewing court is not in a position to supply the reasoning.

7

In sum, although the ALJ's RFC conclusion is somewhat discernible with respect to the fibromyalgia/pain issue, the ALJ did not address the Plaintiff's other uncontradicted limitations in determining that she could actually perform sedentary work. When Plaintiff's symptoms are combined (even accounting for some level of exaggeration of her chronic pain testimony), Plaintiff presents as an individual in significant daily pain with fibromyalgia, arthritis, wrist and ankle pain, sleeping problems/narcolepsy and depression. It is unclear from the ALJ's decision whether he considered each of these limitations in determining that plaintiff could perform the full range of sedentary work. Because the RFC conclusion is not sustainable, neither is the ALJ's conclusion about the number of jobs available that the Plaintiff could work. *Young v. Barnhart,* 362 F.3d 995, 1004-05 (7th Cir. 2004) ("For all of the same reasons that the RFC fell short, the hypothetical question, which was based entirely on that RFC did as well.")

### 3. Sentence Six Remand

A so-called "sentence six" remand allows the case to be returned to the agency for consideration of previously unavailable evidence. "To merit a remand pursuant to the sixth sentence of 42 U.S.C. § 405(g), a claimant must show that 'there is new evidence which is material and that there is good cause for failure to incorporate such evidence into the record in a prior proceeding.'" *Jens v. Barnhart,* 347 F.3d 209, 214 (7th Cir. 2003). Plaintiff has submitted to this court several medical records that were not before the ALJ, and she asserts that they are material to the determination of disability.

The government argues that the documents are not "new" and that there is no showing of good cause for their not having been provided to the agency earlier. The government is correct on both counts. First, the records were all in existence by the time of the ALJ's decision, and as such

8

they are not "new" evidence. "'New' evidence is evidence 'not in existence or available to the claimant at the time of the administrative proceeding.' Although the report had not yet been written at the time of the ALJ's decision, the information summarized in the report had long been in existence." *Id.* (citations omitted). Second, Plaintiff has no explanation for why the records were not submitted earlier, apart from stating that her previous attorney failed to submit them. That is not good cause. If simple inadvertence constitutes "good cause," then the finality and regularity of administrative proceedings would be fatally undermined every time a new lawyer believes additional evidence would be helpful. *Perkins v. Chater,* 107 F.3d 1290, 1296 (7th Cir. 1997). Accordingly, I will not order a "sentence six" remand.

**III. Conclusion**

Because the ALJ did not build a logical bridge between the evidence and his RFC finding, the case is REVERSED and REMANDED under "sentence four" to the Social Security Agency for further proceedings.

**SO ORDERED** this 29th day of August, 2008.

s/ William C. Griesbach
WILLIAM C. GRIESBACH
United States District Judge