UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

DEANNA CULVER,

        Plaintiff,

  v.                                                Case No. 07-C-643

JO ANNE BARNHART,
Commissioner of Social Security,

        Defendant.

**ORDER**

Plaintiff Culver has filed a motion seeking an award of attorney's fees under the Equal Access to Justice Act ("EAJA"), 28 U.S.C. § 2412. The government opposes the motion. It argues that Plaintiff is not entitled to a fee award because the government's position was substantially justified. Moreover, even if an award is appropriate, it argues, the amount sought by the Plaintiff is unreasonable.

On August 29, 2008, this Court remanded Plaintiff's social security case to the Commissioner on the basis that the ALJ's RFC findings were not fully articulated. In particular, I found that the ALJ's decision had not addressed Plaintiff's mental health limitations and how those would impact her RFC.

Fees are to be awarded under EAJA in cases where the government's position is not substantially justified. A position is "substantially justified" if it has a reasonable basis in law and

fact. *Conrad v. Barnhart,* 434 F.3d 987, 990 (7th Cir. 2006). The government has the burden of establishing that its position was substantially justified. *Id.* "EAJA fees may be awarded if the government's pre-litigation conduct, including the ALJ decision itself, or its litigation position are not substantially justified, but the district court is to make only one determination for the entire civil action." *Id.*

The government argues that its position was substantially justified because, in its view, what we have here is a failure to articulate. The United States is correct that sometimes an articulation problem can be a matter of degree not readily discernable from controlling precedent. *Id.* at 991 (noting that the articulation requirement is "a flexible one as to which reasonable persons could disagree.") Even so, this Court remanded the case on the grounds that the ALJ had made barely *any* articulation as to the Plaintiff's mental health limitations. It was not a matter of degree (i.e., how much articulation was required); the problem was that the ALJ's articulation did not speak to the question of Plaintiff's mental health and connect those limitations to her RFC. And in this circuit, I noted, that is highly problematic and grounds for reversal. *See Bauer v. Astrue,* 532 F.3d 606, 608 (7th Cir. 2008).

It is true that I found the government's argument generally convincing as to the ALJ's credibility determinations. But that fact does not overcome the failure to articulate any plausible connection between Plaintiff's mental health limitations and her RFC. I do not believe there is a "reasonable basis in law" to overlook a number of alleged limitations in the RFC analysis. *Conrad,* 434 F.3d at 190. Similarly, this Court's decision noted that many of the government's arguments advanced issues and arguments that were not found within the ALJ's opinion. That is problematic because a district court cannot affirm on grounds that the ALJ himself did not rely upon. Although

that is a well-known rule, unfortunately such arguments are commonplace and only serve to distract courts and litigants from the core issues in the case being appealed. *Golembiewski v. Barnhart,* 382 F.3d 721, 725 (7th Cir. 2004) (finding "the Commissioner's argument had no reasonable basis in law because her argument was based upon facts not relied upon by the ALJ.") This Court's decision further noted that the ALJ's opinion was not a "model of administrative clarity." It contained only a single page of non-boilerplate discussion, yet the government and this Court spent some thirty pages analyzing it and attempting to divine permissible inferences from its tea leaves. This is topsy-turvy. The administrative burdens (especially at Social Security) are well-publicized. Even so, it simply makes no sense to sanction a process that allows the one judge who actually hears testimony and sees the claimant in person to issue a few spartan paragraphs that are analyzed and parsed like so many ancient religious texts or oracular utterances. Thus, there are a number of factors that suggest the government's approach to this case has not been a model of administrative procedure. "The proper inquiry involves an assessment of the entire civil litigation and a determination of whether, overall, the government's position was substantially justified." *Jackson v. Chater,* 94 F.3d 274, 278 (7th Cir. 1996). In sum, the United States has the burden of showing that a case it lost was nevertheless substantially justified, and for the reasons cited above it has not met that burden.

Plaintiff seeks fees of $6,643.51, and the government contests that amount as unreasonably large. The government notes that counsel spent roughly 34 hours briefing the case-in-chief and 6.5 hours to argue the attorney's fees issue. (Since then, Plaintiff's counsel also seeks an additional 5.2 hours for the reply brief.) An attorney's fee request, the government believes, should not constitute such a significant percentage of the entire effort (here, roughly one-third). For support, it cites a case from the Sixth Circuit in which an award was justified when fees sought for the EAJA award

constituted three percent of the total. In *Coulter v. Tennessee,* 805 F.2d 146, 151 (6th Cir. 1986), a civil rights case, the court found that "the hours allowed for preparing and litigating the attorney fee case should not exceed 3% of the hours in the main case when the issue is submitted on the papers without a trial and should not exceed 5% of the hours in the main case when a trial is necessary." Although that may be useful as a general benchmark, the standard does not withstand a great deal of scrutiny. It is just as easy to argue that it is the simpler cases – those requiring fewer hours and not going to trial – that will generate a *higher* percentage of the effort devoted to the fee request. After all, the efforts to collect a fee should be relatively fixed, whereas the expense of going to trial could dwarf those efforts and thus render the fee request a negligible percentage of the total effort. Moreover, that court's discussion of trials versus paper submissions has little applicability in the Social Security context, where "trials" of administrative appeals in district courts are nonexistent. In any event, although the percentage analysis may be useful in spotting outliers (say, if a claimant's fees brief cost more than his merits brief), the percentage is not particularly useful in addressing the core question, which is whether the *amount* of fees sought is reasonable.

I conclude the fees sought are reasonable. First, I note that when the government strongly opposes an EAJA fee request, it should not be heard to complain when the requester spends a great deal of effort trying to collect his fee in the face of that opposition. I further note that counsel's hourly rate is reasonable, and the total amount sought is also. The few requests for extensions of time were for good cause (including counsel's suffering of a heart attack), and they are certainly within the typical ebb and flow of what one expects in a civil lawsuit. (The United States is certainly no shrinking violet when it comes to requesting extensions of time.) The government's parsimony, of course, is a false thrift: in the effort to save a few dollars it has expended significant resources of its own, the Plaintiff's and this Court's.

In sum, the fee request is both warranted and reasonable. The Plaintiff's EAJA motion is **GRANTED** and its motion to file a late reply brief is also **GRANTED**. The United States is to pay $6,643.51 to Plaintiff's counsel.

**SO ORDERED** this ___21st___ day of January, 2009.

                                                 s/ William C. Griesbach
                                                William C. Griesbach
                                                United States District Judge